SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-10-0138-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2005-014235-001 |
| RONNIE LOVELLE JOSEPH, | ) |
| | ) |
| Appellant. | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel,
             Criminal Appeals/Capital Litigation Section
          Amy Pignatella Cain,                              Tucson
             Assistant Attorney General
          Jeffrey A. Zick,                                 Phoenix
             Assistant Attorney General
Attorneys for State of Arizona

MICHAEL J. DEW ATTORNEY AT LAW                              Phoenix
     By   Michael J. Dew
Attorney for Ronnie Lovelle Joseph

_____

**B E R C H**, Chief Justice

¶1     A jury found Ronnie Lovelle Joseph guilty of felony murder and other crimes.  He was sentenced to death for the murder and to prison terms on the other convictions.  We have jurisdiction over this automatic appeal under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4031 (2010).

¶2    Ronnie Joseph went to the apartment where his wife, Darlene Brown, lived with Jerry Roundtree and her fourteen-year-old nephew, Tommar Brown. Joseph and Darlene began to argue in Darlene's locked bedroom, and Joseph pulled a gun and shot her. Jerry kicked open the bedroom door, but turned and ran when he saw Joseph holding a gun. Joseph shot at him, hitting him in the hand.

¶3    As Jerry fled, he saw Tommar go into the bathroom. Joseph pushed open the bathroom door and fired two or three shots, hitting Tommar in his left buttock and chest. The shot to Tommar's chest passed through his heart, killing him.

¶4    Joseph saw Jerry near the front door of the apartment and shot him in the chest before returning to Darlene's bedroom and firing a few more shots, at least two of which hit Darlene. Joseph then fled.

¶5    When police arrived, both Darlene and Jerry identified Joseph as the shooter. Police apprehended Joseph three days later.

¶6    The jury found Joseph guilty of the first degree murder of Tommar, attempted second degree murder of Darlene, attempted first degree murder of Jerry, first degree burglary, and

---

[1]    We view the facts in the light most favorable to sustaining the jury's verdict. *State v. Dann*, 205 Ariz. 557, 562 n.1, 74 P.3d 231, 236 n.1 (2003).

misconduct involving weapons. In the aggravation phase of the trial, the jury found two aggravating factors: Joseph previously had been convicted of a serious offense, A.R.S. § 13-751(F)(2) (2010), and the victim was less than fifteen years old, *id.* § 13-751(F)(9). Joseph did not present any mitigating evidence in the penalty phase, and the jury determined that he should be sentenced to death for Tommar's murder. The trial judge imposed prison terms for the other convictions.

## II. ISSUES ON APPEAL

### A. Confrontation Clause

¶7 To prepare for his testimony, the State's medical expert, Dr. Philip Keen, reviewed Tommar's autopsy report, which Dr. Ruth Kohlmeier had prepared. Dr. Kohlmeier did not testify and the report itself was not admitted into evidence. Joseph asserts that the trial court violated his Sixth Amendment right to confront Dr. Kohlmeier when, over his objection, it allowed Dr. Keen to testify based on Dr. Kohlmeier's report. We review de novo whether the admission of evidence violates the Confrontation Clause. *See State v. Smith*, 215 Ariz. 221, 228 ¶ 20, 159 P.3d 531, 538 (2007).

¶8 This Court has previously held that a testifying medical examiner may offer an opinion based on an autopsy performed by a non-testifying expert without violating the Confrontation Clause. *Id.* at 229 ¶ 26, 159 P.3d at 539; *see*

*also State v. Tucker*, 215 Ariz. 298, 315 ¶ 62, 160 P.3d 177, 194 (2007). We reasoned that "[b]ecause the facts underlying an expert's opinion are admissible only to show the basis of that opinion and not to prove their truth, an expert does not admit hearsay or violate the Confrontation Clause by revealing the substance of a non-testifying expert's opinion." *Tucker*, 215 Ariz. at 315 ¶ 62, 160 P.3d at 194. Joseph presents no argument persuading us to abandon this reasoning today.

¶9 Joseph asserts that Dr. Keen's testimony "constructively placed [the autopsy report] before the jury," making the report like the affidavit of the non-testifying witness in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). But this case differs in two material respects from *Melendez-Diaz*. Here, the court did not admit the autopsy report into evidence and the State presented testimony by a witness subject to cross-examination.

¶10 Even if the autopsy report were itself "testimonial," Dr. Keen did not testify to any of Dr. Kohlmeier's conclusions. *Cf. United States v. Feliz*, 467 F.3d 227, 236 (2d Cir. 2006) (stating that autopsy reports are not testimonial because they are not prepared for purposes of litigation). He testified instead to opinions he formed after reviewing facts and photographs contained in the report. *See State v. Dixon*, 226 Ariz. 545, 553 ¶¶ 36-37, 250 P.3d 1174, 1182 (2011) (finding no

- 4 -

error when medical examiner testified based on his review of an autopsy report and photographs).

**¶11** Joseph also argues that the State's failure to establish Dr. Kohlmeier's unavailability violated his right to confrontation. Before testimonial statements of an absent witness may be admitted into evidence, the Confrontation Clause requires a showing that the witness is unavailable and that the defendant had a prior opportunity for cross-examination. *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713 (2011). But here, no testimonial "statement" by Dr. Kohlmeier was admitted into evidence. The report itself was not admitted and Dr. Keen did not testify to any of Dr. Kohlmeier's conclusions. Instead, Dr. Keen testified to his own conclusions regarding Tommar's injuries and did not act as a mere "conduit" for Dr. Kohlmeier's opinions. *See State v. Snelling*, 225 Ariz. 182, 187 ¶ 19, 236 P.3d 409, 414 (2010). Thus, there was no error.

**¶12** Finally, Joseph argues that the trial court abused its discretion by denying his motion to limit Dr. Keen's testimony and failing to instruct the jury not to consider the facts recited by Dr. Keen for their truth. But in *Smith*, this Court concluded that "[e]xpert testimony that discusses reports and opinions of another is admissible under [Arizona Rule of Evidence 703] if the expert reasonably relied on these matters in reaching his own conclusion." 215 Ariz. at 228 ¶ 23, 159

- 5 -

P.3d at 538; *see also Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012) ("Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.") (plurality opinion). Similarly, testimony regarding an autopsy photograph is not hearsay when offered to show the basis of the testifying expert's opinion and not to prove the truth of prior reports or opinions. *Smith*, 215 Ariz. at 228 ¶ 23, 159 P.3d at 538.

¶13    The trial court did not err in permitting Dr. Keen to testify about the basis for his conclusions regarding Tommar's injuries and cause of death. Dr. Keen's testimony did not exceed its permissible scope, and he did not offer any matters contained in Dr. Kohlmeier's autopsy report to show their truth. Although the trial court might properly have given a limiting instruction regarding the use of Dr. Keen's testimony, Joseph did not request one and the failure to give it was not fundamental error.

### B.    *Enmund/Tison* Instructions

¶14    Joseph contends that the trial court erred by denying his request for an *Enmund/Tison* jury instruction at the aggravation phase of trial. We review a trial court's refusal to give requested instructions for an abuse of discretion.

*State v. Johnson*, 212 Ariz. 425, 431 ¶ 15, 133 P.3d 735, 741 (2006).

¶15    The jury found Joseph guilty of felony murder for killing Tommar during the course of a burglary. The Eighth Amendment does not allow the death penalty to be imposed for felony murder unless the defendant "himself kill[s], attempt[s] to kill, or intend[s] that a killing take place or that lethal force will be employed," *Enmund v. Florida*, 458 U.S. 782, 797 (1982), or is a major participant in the crime and acts with reckless indifference, *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987). Joseph does not dispute that he acted alone in killing Tommar. Because *Enmund* allows imposition of capital punishment on a defendant who actually kills a victim in the course of committing another felony, 458 U.S. at 797-98, the Eighth Amendment did not require that an *Enmund/Tison* instruction be given.

¶16    Joseph nonetheless asserts that the State failed to present sufficient evidence of his intent to kill to support imposition of the death penalty. He argues that because the felony murder instruction required only a finding that he caused Tommar's death during the course of the felony, without reference to any mental state, the one juror who voted for felony murder but not premeditated murder might have believed that Joseph unintentionally killed Tommar, and such intent

cannot suffice to support the death penalty.

¶17    Joseph misapprehends the *Enmund/Tison* requirements. A defendant convicted of felony murder may receive a death sentence regardless of his intent if he actually kills a victim during the course of a felony, or if he is a major participant along with others in committing the felony and "acts with reckless indifference to human life." *State v. Garcia*, 224 Ariz. 1, 15 ¶ 55, 226 P.3d 370, 384 (2010) (citing *Tison*, 481 U.S. at 158).

¶18    Here, the jury found Joseph guilty of felony murder because he fatally shot Tommar during the course of first degree burglary. The burglary was established because Joseph brought a gun into the apartment and remained there unlawfully, intending to commit the attempted murders at issue. *See* A.R.S. §§ 13-1507, -1508 (2010). Sufficient evidence supports the felony murder finding. *Enmund* required the State to show only that, during the commission of a felony, Joseph personally killed Tommar, a fact that is not in dispute. The State must show "reckless indifference" to human life only when the defendant is a major participant in the felony, but is not the actual killer. *See Garcia*, 224 Ariz. at 15 ¶ 55, 226 P.3d at 384 (because the defendant was convicted under *Tison*, the State had to prove beyond a reasonable doubt that he had acted as a major participant in the crime and was recklessly indifferent to the

victim's life); *State v. Bearup*, 221 Ariz. 163, 170 ¶ 33, 211 P.3d 684, 691 (2009) (same); *accord People v. Letner*, 235 P.3d 62, 132 (Cal. 2010) (rejecting argument that death sentence cannot be imposed on actual killer convicted of felony murder absent finding that defendant was a major participant and had a culpable mental state). Joseph does not dispute that he shot and killed Tommar during the commission of a felony. Thus, there is sufficient evidence to support the imposition of the death penalty. The trial court did not abuse its discretion by not giving an *Enmund/Tison* instruction in this case.

### C. Waiver of Mitigation

¶19 Joseph argues that his waiver of the right to present mitigating evidence was "constitutionally invalid" because he did not make his waiver knowingly, voluntarily, and intelligently.

¶20 Although a defendant has a "constitutionally protected right[] to provide the jury with the mitigating evidence," *Williams v. Taylor*, 529 U.S. 362, 393 (2000), he may waive that right even if mitigating evidence exists, *see Schriro v. Landrigan*, 550 U.S. 465, 476 (2007); *accord State v. Hausner*, ___ Ariz. ___, ___ ¶¶ 121-22, ___ P.3d ___, ___ (2012); *State v. Delahanty*, 226 Ariz. 502, 507-08 ¶¶ 28-34, 250 P.3d 1131, 1136-37 (2011). The Supreme Court has never imposed an "informed and knowing" requirement upon a defendant's decision to waive

- 9 -

mitigating evidence, *Landrigan*, 550 U.S. at 479, but this Court requires a voluntary, knowing, and informed waiver of this important constitutional right, *see Delahanty*, 226 Ariz. at 504 ¶ 5, 508 ¶ 34, 250 P.3d at 1133, 1137.

¶21     We recently addressed this issue in detail in *Hausner*, ___ Ariz. at ___ ¶ 122, ___ P.3d at ___, and there set forth the inquiries that the trial court should make to determine that the defendant (1) understands what mitigation is, the right to present mitigation evidence, and the consequences of waiving that right, and (2) makes the decision voluntarily.

¶22     The trial judge here took many of the steps recommended in *Hausner* and repeatedly had Joseph confirm that he understood his rights and yet chose not to present any mitigating evidence. For example, during a status conference after the guilt phase, the judge explained the penalty phase and what mitigation might entail:

> As you know, that is the time where the jury considers any mitigation evidence they may have found [in] the case thus far, and any mitigating evidence they might find during the mitigation or penalty phase itself. And as I indicated before, it's a pretty wide open presentation. There could be witnesses that could be called on your behalf. You can speak on your behalf. You can also submit something in writing, if you choose, to alert the jury to any factors that you believe are mitigating; or in other words, to have them render a finding that leniency would be appropriate here.

Joseph replied that he wanted to waive his right to mitigation.

After continued discussion, the court reminded Joseph that he could do as he chose, but cautioned that the court had to ensure that Joseph understood his rights.

**¶23** The trial court explained mitigation to Joseph at length. Joseph demonstrated that he understood the consequences of the penalty phase by giving such responses as, "there's no mitigation circumstances that I would ask you to feel pity or mercy on me. Let the hatchet fall." His statements satisfied the "knowing" requirement. Joseph also stated that "death don't scare me," reflecting his understanding that his case could result in a death sentence and that he could ask the jury for "pity or mercy" if he so desired. The court found Joseph competent and detailed its reasons for allowing Joseph to waive mitigation.

**¶24** Joseph repeatedly expressed his desire not to present mitigating evidence. Although defense counsel notified the court pursuant to Rule 15.2(h) of certain mitigating circumstances that might have helped Joseph's case and later made an offer of proof of mitigating circumstances, Joseph voluntarily refused to present any mitigating evidence or statements during the penalty phase. We conclude that Joseph's waiver of his right to present mitigation was voluntary, knowing, and informed.

### D.    Review of the Death Sentence

¶25    Because the murder occurred after August 1, 2002, we review the death sentence to "determine whether the trier of fact abused its discretion in finding aggravating circumstances and imposing a sentence of death."  A.R.S. § 13-756(A) (2010). A finding of aggravating circumstances or the imposition of a death sentence is not an abuse of discretion if "there is any reasonable evidence in the record to sustain it."  *State v. Morris*, 215 Ariz. 324, 341 ¶ 77, 160 P.3d 203, 220 (2007) (internal quotation marks omitted).

¶26    The jury found two aggravating factors proven:  Joseph previously had been convicted of a serious offense, A.R.S. § 13-751(F)(2), and the victim was less than fifteen years of age, § 13-751(F)(9).  Joseph does not contest either finding and the record supports the jury's findings.

¶27    Once an aggravating factor has been established, the penalty phase jury determines whether, in light of any mitigating circumstances, death is the appropriate penalty. A.R.S. §§ 13-751(C), -752(D), (F).

¶28    Although Joseph elected not to present any mitigating evidence, the jury still could consider in mitigation "any evidence that was presented at any prior phase of the trial." A.R.S. § 13-752(I).    The record, however, shows little mitigation.  The jury did not abuse its discretion in concluding

that the mitigating circumstances were not sufficiently substantial to call for leniency.

### III.  CONCLUSION

¶29     We affirm Joseph's convictions and sentences.[2]


_____
                    Rebecca White Berch, Chief Justice


CONCURRING:


_____
Scott Bales, Vice Chief Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice

---

[2]     Joseph did not challenge any of the non-capital convictions or sentences.  He did raise eighteen claims to avoid federal preclusion.  Those claims, and the opinions by this Court he identifies as rejecting them, are presented verbatim in the Appendix.

**APPENDIX:  ISSUES RAISED TO AVOID PRECLUSION**

1.   The death penalty is per se cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 186-87, 96 S.Ct 2909, 49 L.Ed.2d 859 (1976); *State v. Salazar*, 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992); *State v. Gillies*, 135 Ariz. 500, 507, 662 P.2d 1007, 1014 (1983).

2.   Execution by lethal injection is cruel and unusual punishment. *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995).

3.   The death statute is unconstitutional because it fails to guide the sentencing jury. *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991).

4.   The statute unconstitutionally fails to require either cumulative consideration of multiple mitigating factors or that the jury make specific findings as to each mitigating factor. *State v. Gulbrandson*, 184 Ariz. 46, 69, 906 P.2d 579, 602 (1995); *State v. Ramirez*, 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994); *State v. Fierro*, 166 Ariz. 539, 551, 804 P.2d 72, 84 (1990).

5.   Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration of that evidence. *State v. Mata*, 125 Ariz. 233, 242, 609 P.2d 48, 57 (1980).

6.   Arizona's death statute insufficiently channels the sentencer's discretion in imposing the death sentence. *State v. West*, 176 Ariz. 432, 454, 862 P.2d 192, 214 (1993); *Greenway*, 170 Ariz. at 162, 823 P.2d at 31.

7.   Arizona's death statute is unconstitutionally defective because it fails to require the State to prove that death is appropriate. *Gulbrandson*, 184 Ariz. at 72, 906 P.2d at 605.

8.   The prosecutor's discretion to seek the death penalty unconstitutionally lacks standards. *Salazar*, 173 Ariz. at 411, 844 P.2d at 578.

9.   The Constitution requires a proportionality review of a defendant's death sentence. *Salazar*, 173 Ariz. at 416, 844 P.2d at 583; *State v. Serna*, 163 Ariz. 260, 269-70, 787 P.2d 1056, 1065-66 (1990).

10.  There is no meaningful distinction between capital and non-

capital cases. *Salazar*, 173 Ariz. at 411, 844 P.2d at 578.

11. Applying a death statute enacted after the Supreme Court's decision in Ring II violates the ex post facto clauses of the federal and state constitutions and A.R.S. § 1-244. *Ring III*, 204 Ariz. at 545-47 ¶¶ 15-24, 65 P.3d at 926-928.

12. The death penalty is cruel and unusual because it is irrationally and arbitrarily imposed and serves no purpose that is not adequately addressed by life in prison. *State v. Pandeli*, 200 Ariz. 365, 382, ¶ 88, 26 P.3d 1136, 1153 (2001), vacated on other grounds, *Ring v. Arizona*, 536 U.S 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

[13. missing; no text]

[14. missing; no text]

15. Arizona's death penalty statute is unconstitutional because it requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist. *Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996); *State v. Bolton*, 182 Ariz. 290, 310, 896 P.2d 830, 850 (1995). *State v. Tucker ("Tucker II")*, 215 Ariz. 298, 160 P.3d 177 (2007).

16. The death penalty is unconstitutional because it permits jurors unfettered discretion to impose death without adequate guidelines to weigh and consider appropriate factors and fails to provide means to distinguish between those who deserve to die or live. *State v. Johnson*, 212 Ariz. 425, 440 ¶ 69, 133 P.3d 735, 750 (2006).

17. The trial court improperly omitted penalty phase instructions that the jury could consider mercy or sympathy in evaluating the mitigation evidence and determining whether to sentence the defendant to death. *State v. Carreon*, 210 Ariz. 54, 70-71 ¶¶ 81-87, 107 P.3d 900, 916-17 (2005).

18. The jury instruction that required the jury to unanimously determine that the mitigating circumstances were "sufficiently substantial to call for leniency" violated the Eighth Amendment. *State v. Ellison*, 213 Ariz. 116, 139 ¶¶ 101-102, 140 P.3d 899, 922 (2006).

19. The refusal to permit voir dire of prospective jurors regarding their views on specific aggravating and mitigating circumstances violates Appellant's rights under the Sixth and Fourteenth Amendments. *State v. Johnson*, 212 Ariz. 425, 440 ¶¶ 29-35, 133 P.3d 735, 750 (2006).

20. Refusing to instruct the jury or permit the introduction of evidence and argument regarding residual doubt violated Appellant's rights under the Sixth, Eighth and Fourteenth Amendments and Arizona law. *State v. Harrod (Harrod III)*, 218 Ariz. 268, 278-79 ¶¶ 37-39, 183 P.3d 519, 529-30 (2008); *State v. Garza*, 216 Ariz. 56, 70 ¶ 67, 163 P.3d 1006, 1020 (2007).