IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. WILLIAM G. MONTGOMERY,
Maricopa County Attorney, *Petitioner/Appellee,*

*v.*

THE HONORABLE RONALD KARP,
Justice of the Peace Pro Tempore,
WEST MESA JUSTICE COURT, *Respondent Judge/Appellee,*

MATTHEW VORIS, *Real Party in Interest/Appellant.*

No. 1 CA-CV 13-0599

FILED 10-09-2014

Appeal from the Superior Court in Maricopa County
No.  LC2013-000231-001
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Gerald R. Grant
*Counsel for Petitioner/Appellee*

Jeffrey Mehrens, Attorney at Law, Phoenix
By Jeffrey Mehrens
*Counsel for Real Party in Interest/Appellant*

_____

## OPINION

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Maurice Portley joined.

_____

**H O W E**, Judge:

**¶1**        Real Party in Interest Matthew Voris appeals from the superior court's order reversing the justice court's order precluding the State's expert witness from testifying. The parties contest whether an expert witness may testify as to her own independent opinion when she relies on facts and data prepared by a non-testifying expert. We hold that the expert may testify when the basis of her independent opinion are forensic reports prepared by a non-testifying expert, if the testifying expert reasonably relied on these facts and data to reach her conclusions. Consequently, we affirm the superior court's order.

## FACTS AND PROCEDURAL HISTORY

**¶2**        As relevant here, Voris was cited for two counts of driving under the influence of intoxicating liquor ("DUI") and one count of exceeding a reasonable and prudent speed. The police drew Voris's blood, and a Scottsdale Police Department Crime Lab criminalist, Lynette Kogler, analyzed the blood using a gas chromatograph ("GC"). Kogler subsequently moved out of state and left the profession.

**¶3**        Before trial, the State moved to admit expert testimony of another criminalist, Jennifer Valdez, a technical leader in the Scottsdale Police Department Crime Lab. Valdez would testify about her opinion regarding Voris's blood alcohol concentration ("BAC") from the blood sample tested. Valdez was neither present during Kogler's analysis of Voris's blood sample, nor was she the technical person who reviewed Kogler's work. To form her opinion, Valdez reviewed Kogler's examination notes and reports, chromatograms from the blood sample Kogler analyzed, the printouts from the quality control samples, and the summary of quality assurance for the blood-alcohol sequence that Kogler had performed on Voris's blood sample. The State does not seek to admit any of these documents into evidence.

¶4        The State argued that pursuant to *State v. Joseph*, 230 Ariz. 296, 283 P.3d 27 (2012), no Confrontation Clause violation occurs when an expert renders an independent opinion based on testimonial or non-testimonial facts and data, which was the situation here. The justice court denied the State's motion, concluding that Valdez, acting as a substitute witness, could not testify because her testimony would violate Voris's confrontation rights. The court found that the proposed testimony was testimonial in nature and that Kogler was unavailable to Voris. Moreover, the court distinguished *Joseph* because it involved an autopsy report, not a blood test report.

¶5        The State timely filed a petition for special action in the superior court. The court accepted jurisdiction and granted relief to the State, finding that the Confrontation Clause was not implicated and that *Joseph* was "on point and applicable to this case." Voris timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) and Arizona Rule of Procedure for Special Actions 8(a).

## DISCUSSION

¶6        Voris argues that the superior court abused its discretion in ruling that the justice court erred because the proposed expert testimony did not implicate the Confrontation Clause. When a special action initiated in superior court is appealed, we must conduct a bifurcated review to consider, first, the superior court's acceptance or refusal of jurisdiction, and second, its decision on the merits. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92, 607 P.2d 965, 969 (App. 1979). Here, neither party contends that the superior court abused its discretion in accepting special action jurisdiction. *See Hamilton v. Mun. Court of Mesa*, 163 Ariz. 374, 376–77, 788 P.2d 107, 109–10 (App. 1989). Accordingly, we turn to the court's decision to grant relief. *Id.*

¶7        In reviewing a superior court decision on the merits, we determine whether the court abused its discretion in granting or denying special action relief. *Files v. Bernal*, 200 Ariz. 64, 65 ¶ 2, 22 P.3d 57, 58 (App. 2001). A court abuses its discretion when the record fails to provide substantial support for its decision or the court commits an error of law in reaching the decision. *Id.* In the present case, the superior court did not abuse its discretion in reversing the justice court's order.

¶8        To resolve the issue raised in this case, we must examine the Arizona Rules of Evidence in light of recent Confrontation Clause jurisprudence. Under Arizona Rule of Evidence 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Although the Arizona Rules of Evidence permit an expert to present an opinion based on inadmissible information, this evidentiary rule must still comport with constitutional requirements. *See State v. Jessen*, 130 Ariz. 1, 7 n.1, 633 P.2d 410, 416 n.1 (1981) (quoting Ariz. R. Evid. 703 cmt.) ("Even if otherwise inadmissible hearsay underlying an expert opinion is introduced into evidence, it has 'only the limited purpose of disclosing the basis for the opinion.'"); Ariz. R. Evid. 703 cmt. (providing that facts and data reasonably relied upon by experts in the particular field and that form the basis of an expert's opinion are admissible "unless they should be excluded pursuant to an applicable constitutional provision").

**¶9** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause prohibits the admission of an out-of-court statement of a witness who does not appear at trial if the statement is testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). The clause reaches "formalized testimonial materials," such as depositions, affidavits, and prior testimony, or statements resulting from "formalized dialogue," such as custodial interrogation. *Michigan v. Bryant*, – U.S. –, 131 S. Ct. 1143, 1167 (2011) (Thomas, J., concurring in judgment) (quoting *Davis v. Washington*, 547 U.S. 813, 840 (2006) (Thomas, J., concurring in part)); *see also State v. Medina*, 232 Ariz. 391, 407 ¶ 63, 306 P.3d 48, 64 (2013).

**¶10** Since 2004, the Supreme Court has considered *Crawford*'s application in several cases involving forensic reports. Notably, in *Bullcoming v. New Mexico*, – U.S. –, 131 S. Ct. 2705, 2710 (2011), the Court held that blood-alcohol analysis reports were testimonial and that a non-testifying analyst's report stating the defendant's BAC, offered into evidence through the laboratory supervisor, was erroneously admitted. The Court reasoned that forensic test results are the product of independent judgment and "are meant for cross-examination." *Id.* at 2714. Thus, cross-examination of a surrogate witness, even one with supervisory authority over the non-testifying analyst, was insufficient. *Id.* at 2714–15. But *Bullcoming* "is not a case in which an expert witness was asked for his

*independent opinion* about underlying testimonial reports that were not themselves admitted into evidence," and the State in that case did not assert that the surrogate witness offered an "independent, expert opinion." *Id.* at 2722 (Sotomayor, J., concurring in part) (emphasis added).

¶11          Most recently, in *Williams v. Illinois*, – U.S. –, 132 S. Ct. 2221 (2012), a plurality of the Supreme Court upheld the admission of expert testimony that the defendant's DNA profile matched a DNA profile generated by a non-testifying scientist. *See id.* at 2228–31. Four justices reasoned that the statements in the profile comparison report were non-testimonial because, first, the out-of-court statements were related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion relied and were not offered for their truth. *Id.* at 2240–41. And second, even if the report had been admitted into evidence, it was not a testimonial document because it was not prepared for the "primary purpose of accusing a targeted individual," which distinguished the report from the forensic report in *Bullcoming*. *Id.* at 2242.

¶12          Arizona courts have addressed similar issues before and after *Williams*. In *State v. Joseph*, the Arizona Supreme Court affirmed its previous position that testimony of a State's expert witness based on the expert's review of a victim's autopsy report, which was prepared by another, non-testifying expert, did not violate the Confrontation Clause. *See Joseph*, 230 Ariz. at 298 ¶ 8, 283 P.3d at 29; *see also State v. Smith*, 215 Ariz. 221, 229 ¶ 26, 159 P.3d 531, 539 (2007); *State v. Tucker*, 215 Ariz. 298, 315 ¶ 62, 160 P.3d 177, 194 (2007). The court reasoned that admitting an expert's testimony does not include admitting the underlying hearsay statements when the testimony reveals the substance of the non-testifying expert's opinion, because the underlying facts are used only to show the basis of that opinion and not to prove their truth. *Joseph*, 230 Ariz. at 298 ¶ 8, 283 P.3d at 29 (citing *Tucker*, 215 Ariz. at 315 ¶ 62, 160 P.3d at 194). The court also noted that the testifying expert was not acting as a "mere conduit" for the admissibility of the non-testifying expert's opinions. *Id.* at 299 ¶ 22, 283 P.3d at 30. Thus, the Confrontation Clause was not violated. *Id.*

¶13          Therefore, an expert may testify to otherwise inadmissible evidence, including the substance of a non-testifying expert's analysis, if such evidence forms the basis of the expert's opinion and is reasonably relied upon by experts in the field. *Id.* at 299 ¶ 12, 283 P.3d at 30 (citing *Smith*, 215 Ariz. at 228 ¶ 23, 159 P.3d at 538); *see also Williams*, 132 S. Ct. at 2228 ("Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not

offered for their truth and thus fall outside the scope of the Confrontation Clause.") (plurality opinion).

¶14        Consequently, when an expert gives an independent opinion, the expert is the witness whom the defendant has the right to confront. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity to fully cross-examine the expert witness who testifies against him, allowing the factfinder to understand the basis for the expert's opinion and determine whether that opinion should be found credible.

¶15        Here, like in *Joseph*, the State seeks to admit expert testimony from Valdez regarding Voris's BAC, not the documents that form the basis of her opinion. As such, the documents are used only to show the basis of her opinion and not to prove their truth. Also, like the autopsy report in *Joseph*, the GC notes and reports here are the product of objective, computer-generated data and do not require subjective analysis. *See State v. Fields*, 196 Ariz. 580, 581–82 ¶ 2, 2 P.3d 670, 671–72 (App. 1999) (describing the gas chromatography method and explaining how the resulting ratios from the computer-generated graphs reveal concentrations of substances in the blood). Further, because the notes and reports are used for the sole purpose of explaining the basis on which Valdez's opinion rests, they fall outside the scope of the Confrontation Clause. More importantly, the State is not offering the documents into evidence; it is offering Valdez's independent, expert opinion. At trial, Voris will have the opportunity to fully cross-examine her, thereby satisfying the Confrontation Clause.

¶16        Finally, also similar to *Joseph*, Valdez is not merely acting as a conduit for Kogler's conclusions. During the hearing for the State's motion, Valdez testified about her own skills, knowledge, experience, and training regarding the GC method for analyzing blood samples. Valdez also explained the process for generating each of the documents Kogler created and verified the integrity of all the facts and data—that she independently reviewed—to reach her conclusion. Consequently, pursuant to *Joseph*, Valdez's testimony that discusses Kogler's reports and notes as the basis for her independent opinion is admissible under Rule 703, if Valdez reasonably relied on these matters in reaching her own conclusion.

¶17        Voris asserts that "[t]he holding in *Joseph*, however, is limited to cases where the evidence sought to be introduced through a substitute expert is non-testimonial." But *Joseph* is not as limited as Voris proposes. The *Joseph* court stated, "Even if the autopsy report were itself 'testimonial,' Dr. Keen did not testify to any of Dr. Kohlmeier's conclusions. He testified instead to opinions he formed after reviewing facts and photographs

contained in [Dr. Kohlmeier's] report." *Joseph*, 230 Ariz. at 298 ¶ 10, 283 P.3d at 29. Accordingly, the key inquiry is not whether the basis of an expert's testimony is testimonial, but rather whether the expert is testifying to the non-testifying expert's conclusions or his own. Here, like in *Joseph*, Valdez is testifying to her own independent conclusion.

¶18 Our analysis of expert testimony based on forensic reports prepared by a non-testifying expert is consistent with that of other jurisdictions. *See, e.g.*, *People v. Dungo,* 286 P.3d 442, 448–49 (Cal. 2012) (providing that substitute medical examiner may testify regarding his "independent opinion" as expert witness when that opinion was based solely on a review of an autopsy report prepared by non-testifying expert); *State v. Greineder*, 984 N.E.2d 804, 815–16 (Mass. 2013) (holding that defendant's confrontation rights were not violated by admission of testimony of DNA expert despite expert's reliance on the DNA test results obtained by non-testifying analyst); *Jenkins v. State*, 102 So.3d 1063, 1069 ¶ 17 (Miss. 2012) (holding that defendant's confrontation rights were not violated when laboratory supervisor was allowed to testify about a GC/mass spectroscopy report on defendant's blood sample and his conclusion that the substance seized from defendant was cocaine, even though another analyst performed the test); *State v. Ortiz-Zape*, 743 S.E.2d 156, 163–64 (N.C. 2013) (holding that admission of crime-lab analyst's expert opinion, based on her independent analysis of testing performed by another analyst in her laboratory of defendant's blood sample, that substance tested was cocaine did not violate defendant's confrontation rights).

¶19 Further, Voris maintains that if evidence is testimonial, a substitute analyst's testimony based on a report prepared solely for the purpose of litigation violates the Confrontation Clause under *Crawford* and its progeny. But the *Joseph* court specifically distinguished the *Crawford* line of decisions by noting that it differed "in two material respects." First, the trial court in *Joseph* did not admit the report into evidence, and second, the State presented testimony by a witness subject to cross-examination. *See Joseph*, 230 Ariz. at 298–99 ¶¶ 9–12, 283 P.3d at 29–30. Here, even if the reports and notes were testimonial, the two same material differences are also present. The State is not offering the documents into evidence, and it is

presenting testimony by a witness subject to cross-examination. Accordingly, this case is also distinguishable from *Crawford*.

**CONCLUSION**

¶20        We affirm the superior court's order.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh