NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JASON SMITH, *Appellant.*

No. 1 CA-CR 21-0451
FILED 7-14-2022

Appeal from the Superior Court in Yuma County
No. S1400CR201901251
The Honorable Brandon S. Kinsey, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert Trebilcock
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Jason Smith appeals from his convictions and sentences for possessing dangerous drugs, marijuana for sale, narcotic drugs, and drug paraphernalia. First, he argues the superior court fundamentally erred by failing to give a mere-presence jury instruction. Next, he asserts the admission of drug-analysis testimony violated his confrontation rights because the testifying expert relied on data generated by a non-testifying expert. Finally, he contends the prosecution presented insufficient evidence to support his convictions. We find no reversible error and affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        Around 6:30 a.m. in December 2019, law-enforcement officers with the Yuma County Narcotics Task Force arrived at Smith's father's residence to execute a search warrant. A double-wide trailer, two travel trailers, and a shed were on the property. When the officers approached the shed, they immediately noticed an "overwhelming odor of fresh marijuana and burnt marijuana." The officers knocked on the shed's door and announced their presence, but no one answered. Smith opened the door after the officers knocked and announced again.

¶3        After the officers ordered Smith to turn around and put his hands behind his back, an officer had to remove him from the shed forcibly. When the officers later took Smith to the ground to detain him, he initially refused to put his hands behind his back, yelling that the officers were "illegally trespassing" and "harassing" him. He continued shouting until the officers placed him in a patrol vehicle. The officers ultimately detained 11 individuals from the property, including two who had been in the shed

---

[1]      We view the facts in the light most favorable to upholding the verdicts. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

with Smith and Smith's "medically compromised" father. Smith's father passed away before the trial.

¶4        Once inside the shed, the officers saw that the area had been turned into a "makeshift room" containing a bed, a couch, a workbench, a cabinet, a small refrigerator, and scattered clothes. In their ensuing search, the officers found six pounds of marijuana on a "drying shelf" in the ceiling, ten grams of marijuana in a dish, marijuana in various jars, marijuana and a meth pipe on the couch, marijuana in a baggie near a stereo, a marijuana flower, marijuana on a bench, marijuana and a joint located on a plate, two scales and cannabis wax near the bed, methamphetamine inside a jacket on the couch, and cannabis wax inside the refrigerator.

¶5        The State charged Smith with possessing dangerous drugs (methamphetamine) for sale, a class two felony (Count One); possessing marijuana for sale, a class two felony (Count Two); possessing narcotic drugs (cannabis wax) for sale, a class two felony (Count Three); and two counts of possessing drug paraphernalia, class six felonies (Counts Four and Five). At the trial, the State called Department of Public Safety ("DPS") forensic scientist Greggory Longoni, who testified that the seized substances were methamphetamine, marijuana, and cannabis. Although Longoni offered his independent opinions, he reached his conclusions based on his review of testing conducted by former DPS forensic scientist Elizabeth Rast, who did not testify. The State did not offer Rast's opinions or reports as evidence.

¶6        After the State presented its case-in-chief, the superior court denied Smith's motion for judgments of acquittal under Arizona Rule of Criminal Procedure 20. Smith elected not to testify and did not call any witnesses. Smith had filed a pretrial notice listing mere presence as a defense, but he neither requested a mere-presence jury instruction nor objected to its omission in the final instructions. In the closing argument, defense counsel asserted that Smith had only been caring for his ill father when the officers arrived and was uninvolved in the illegal activity on the property.

> The reason a son may be visiting his father in a small, modest home in the foothills that has ten occupants other than him can be inferred in a real positive way. He's checking on his father who's failing.

*        *        *

3

> You can infer . . . that [Smith] is just simply checking on these people who are squatting on his father's home. That's the natural inference. We have two, four, six, seven with [Smith], and other people, three other people squatting on the property.
>
> The inference might be that these people are taking advantage of the elderly gentleman and his faith. The person who gets arrested is the mouthy one.

¶7 The jury found Smith guilty as charged on Counts Two, Four, and Five and guilty of the lesser-included offenses of simple possession on counts One and Three. The jury also found that the marijuana's value was $20 per gram. After granting the State's motion to dismiss Count Four, the superior court sentenced Smith to an aggregate term of four years' imprisonment on the remaining counts. Smith appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A. The Superior Court Did Not Fundamentally Err by Omitting a Mere-Presence Instruction.

¶8 Smith argues the superior court should have independently given a mere-presence instruction. As he acknowledges, our review is limited to fundamental, prejudicial error because he did not request such an instruction or object to the given instructions. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). To prevail on fundamental-error review, Smith must show trial error exists, and the error (1) went to the foundation of his case, (2) deprived him of a right essential to his defense, or (3) was so egregious that he could not possibly have received a fair trial. *Id.* at 142, ¶ 21. Under prongs one and two, Smith must also make a separate, fact-intensive showing of prejudice. *Id.* "To prove prejudice, [Smith] must show that a reasonable, properly instructed jury 'could have reached a different result.'" *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (quoting *State v. James*, 231 Ariz. 490, 494, ¶ 15 (App. 2013)).

¶9 We assess jury instructions in their entirety to determine whether they accurately reflect the law. *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75 (2000). Although parties are generally entitled to an instruction on any reasonably supported theory, courts need not give an instruction "when its substance is adequately covered by other instructions." *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998). A court fundamentally errs when it fails to independently instruct on a matter "vital to a proper consideration of the

evidence," and reversible error occurs when the given instructions could have misled the jurors. *State v. Johnson*, 205 Ariz. 413, 417, ¶¶ 10–11 (App. 2003) (quoting *State v. Avila*, 147 Ariz. 330, 337 (1985)). "[I]n evaluating the jury instructions, we consider the instructions in context and in conjunction with the closing arguments of counsel." *Id.* at ¶ 11.

¶10 "'Mere presence' means more than a lack of criminal intent. It refers to 'passivity and nonparticipation' in the crime." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 36 (1998) (quoting *United States v. Perkins*, 926 F.2d 1271, 1283–84 (1st Cir. 1991)). A mere-presence instruction typically provides:

> Guilt cannot be established by the defendant's mere presence at a crime scene, mere association with another person at a crime scene or mere knowledge that a crime is being committed. The fact that the defendant may have been present, or knew that a crime was being committed, does not in and of itself make the defendant guilty of the crime charged. One who is merely present is a passive observer who lacked criminal intent and did not participate in the crime.

Rev. Ariz. Jury Instr. Stand. Crim. 43 (mere presence) (5th ed. 2019). Smith asserts the lack of such an instruction prohibited the jury from "know[ing] that the State was required to show more than [his] mere proximity to the illegal substances and items in the shed, or his association with others at the scene." We disagree.

¶11 The superior court instructed the jury that the charged offenses required proof that Smith knowingly possessed the contraband. The court also instructed that (1) "knowingly" meant Smith had "acted with awareness of the existence of conduct or circumstances constituting an offense," and (2) "possession" meant he "knowingly had direct physical control over an object" or "knowingly exercised dominion or control over [an object], either acting alone or through another person."

¶12 Presuming the jurors followed those instructions, as we must absent evidence to the contrary, *State v. Payne*, 233 Ariz. 484, 518, ¶ 151 (2013), their finding that Smith knowingly possessed the shed's illegal contents negates his claim that the convictions could have unlawfully resulted from his passive observation of the crimes. *See State v. Crain*, 250 Ariz. 387, 397, ¶ 33 (App. 2021). Furthermore, in the closing arguments, counsel clarified any potential ambiguity. The State reminded the jurors that the State "ha[d] to prove knowledge, [and] ha[d] to prove possession"

to convict Smith. And as noted above, Smith explained that the jurors could not find him guilty simply because he was at the crime scene.

¶13       Yet Smith argues *State v. Aro*, 188 Ariz. 521 (App. 1997), *State v. Noriega*, 187 Ariz. 282 (App. 1996), and *State v. Dominguez*, 192 Ariz. 461 (App. 1998), still entitle him to a mere-presence instruction. While he may have been entitled to the instruction if he asked for it, his reliance on those cases—when he must establish fundamental error—is misplaced. *Aro* and *Noriega* support the proposition that courts must give a mere-presence instruction when the evidence supports it in accomplice-liability prosecutions. *Aro*, 188 Ariz. at 524–25; *Noriega*, 187 Ariz. at 284–85; *see also Doerr*, 193 Ariz. at 65, ¶ 37 (noting the *Noriega* court "expressly limited its analysis to a prosecution for accomplice liability"). That proposition does not apply to Smith's case because the State did not charge him as an accomplice, nor did the superior court give an accomplice-liability instruction.

¶14       Smith's reliance on *Dominguez* is just as unavailing. In that case, we held that "failing to instruct the jury on mere presence is not fundamental error when the instruction would not advance the assertion of misidentification." 192 Ariz. at 464, ¶ 12. Smith cites no authority for his contention that the *Dominguez* holding implicitly compels courts to give a mere-presence instruction "when [it] is central to a defendant's case," and nothing in *Dominguez* suggests the instruction's absence, under those circumstances, is fundamental error. *See also State v. Bible*, 175 Ariz. 549, 572 (1993) ("[T]he same error may be fundamental in one case but not in another."). Thus, the superior court committed no error, much less fundamental, by not *sua sponte* giving the instruction.

¶15       Moreover, even if Smith could establish fundamental error under prongs one or two, he fails to show prejudice. To support his prejudice claim, he asserts the jurors could have drawn "an unlawful inference" that his "mere association" with the contraband or the other detained individuals was sufficient for them to return guilty verdicts. But the given instructions explained that the State had to prove beyond a reasonable doubt that Smith knowingly possessed the contraband. Smith identifies no record evidence suggesting the instructions misled or confused the jurors. Without more, he has not carried his burden to show a reasonable jury could have reached a different result had they received a mere-presence instruction. *See Dickinson*, 233 Ariz. at 531, ¶ 13 (Defendants "must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry [their] burden" on fundamental-error review.) (quoting *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14 (App. 2006)). Nor has he otherwise

shown that the instruction's absence rendered his trial unfair under prong three of the fundamental error analysis.

## B.     The Admission of Longoni's Testimony Did Not Violate Smith's Confrontation Rights.

**¶16**     Smith next argues the superior court violated his confrontation rights by admitting Longoni's testimony because Longoni formed his opinions by relying on a non-testifying expert's analysis. We review *de novo* evidentiary rulings implicating a defendant's confrontation rights. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

**¶17**     We rejected a similar argument in *State ex rel. Montgomery v. Karp*, 236 Ariz. 120 (App. 2014). In *Karp*, the criminalist who had determined the defendant's blood alcohol concentration ("BAC") was unavailable to testify at the trial. *Id.* at 122, ¶¶ 2, 4. As a result, before the trial, the State moved to admit a different criminalist's independent BAC opinion based on her review of the non-testifying criminalist's notes, reports, and quality assurance procedures. *Id.* at ¶ 3. The State did not seek to introduce the original criminalist's documents into evidence. *Id.*

**¶18**     Finding the proposed testimony did not violate the defendant's confrontation rights and was therefore admissible, we concluded that an expert may offer an independent opinion "when the basis of [the] independent opinion are forensic reports prepared by a non-testifying expert, if the testifying expert reasonably relied on these facts and data to reach [the] conclusions," and the testifying expert does not serve as a "mere conduit" for the non-testifying expert's opinions. *Karp*, 236 Ariz. at 122, 124–25, ¶¶ 1, 12–13, 17–18. We reasoned:

> when an expert gives an independent opinion, the expert is the witness whom the defendant has the right to confront. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity to fully cross-examine the expert witness who testifies against him, allowing the factfinder to understand the basis for the expert's opinion and determine whether that opinion should be found credible.

*Id.* at 124, ¶ 14.

**¶19**     Here, as in *Karp*, Longoni presented his independent expert opinions permissibly based on his review of Rast's work, and he was subject to Smith's full cross-examination. Longoni thus did not act as a "mere conduit" for her conclusions. *See also Karp* at 124, ¶ 13 (finding no hearsay

violation when an expert testifies "to otherwise inadmissible evidence, including the substance of a non-testifying expert's analysis, if such evidence forms the basis of the expert's opinion"). Nor did the State introduce Rast's opinions or any of her work-product documents into evidence. Had Smith sought to challenge Rast's analysis, he could have called her to the stand and questioned her, but he chose not to do so. *See Williams v. Illinois*, 567 U.S. 50, 58–59 (2012) (A defendant "who really wishes to probe the reliability of the . . . testing done in a particular case" may subpoena those involved in the testing process and question them at trial.). Given these circumstances, Smith was not deprived of his confrontation rights.

**¶20**　　　　Even so, Smith asserts three United States Supreme Court cases—*Bullcoming v. New Mexico*, 564 U.S. 647 (2011), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Williams*—require the exclusion of Longoni's testimony. *Bullcoming* and *Melendez-Diaz* do not apply here because those cases involved the unconstitutional admission of testimonial documents prepared by non-testifying witnesses. *Bullcoming*, 564 U.S. at 663–65; *Melendez-Diaz*, 557 U.S. at 307–11. Nor does *Williams* entitle Smith to relief, given that *Williams* informed our analysis in *Karp*. 236 Ariz. at 124, ¶¶ 11–14. Moreover, "*Williams* is a plurality decision and has limited if any precedential value," *State v. Ortiz*, 238 Ariz. 329, 341, ¶ 52 (App. 2015), so it provides "no binding rule for determining when reports are testimonial." *State v. Medina*, 232 Ariz. 391, 406, ¶ 60 (2013). Thus, the superior court did not err by admitting Longoni's testimony.

## C.　　Substantial Evidence Supports the Convictions.

**¶21**　　　　Smith further argues the superior court erroneously denied his Rule 20 motion, asserting the State failed to present sufficient evidence to prove the knowledge and possession elements of the charged offenses. We review the court's ruling *de novo. State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Because Smith does not challenge the remaining elements of his convictions, we do not address them. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim.").

**¶22**　　　　Rule 20(a)(1) directs courts to enter a judgment of acquittal "if there is no substantial evidence to support a conviction." Substantial evidence "is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v, Jones*, 125 Ariz. 417, 419 (1980)). "[T]he relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 66 (quoting *Jackson v. Virginia*, 433 U.S. 307 (1979)). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424–25 (1976)). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). We do not reweigh conflicting evidence or assess credibility in our review. *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013).

**¶23** "Criminal intent, being a state of mind, is shown by circumstantial evidence. [A] [d]efendant's conduct and comments are evidence of his state of mind." *State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983)). "Possession may be actual or constructive." *State v. Gonsalves*, 231 Ariz. 521, 523, ¶ 9 (App. 2013). It need not be "[e]xclusive, immediate and personal." *Id.* (quoting *State v. Carroll*, 111 Ariz. 216, 218 (1974)). Actual possession occurs when a defendant exercises direct, physical control over the property. *Id.* "Constructive possession exists when the prohibited property 'is found in a place under [the defendant's] dominion [or] control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the [property].'" *State v. Cox*, 214 Ariz. 518, 520, ¶ 10 (App. 2007) (quoting *State v. Villalobos Alvarez*, 155 Ariz. 244, 245 (App. 1987)). Dominion means "absolute ownership"; control means to "have power over." *Id.* at ¶ 9 (quoting *State v. Tyler*, 149 Ariz. 312, 316 (App. 1986)).

**¶24** Here, the uncontroverted evidence established that Smith was occupying a furnished room on his father's property early one morning when he eventually opened the door in response to the officers' repeated knock-and-announce attempts. Officers had to pull Smith out of the shed while he asserted that the officers were trespassing on the property and harassing him. Inside the shed, the officers readily discovered over 2700 grams of marijuana, having an approximate street value of $54,000; methamphetamine; cannabis; and drug paraphernalia.

**¶25** Based on the time of day, the shed's inhabited appearance, and Smith's relationship with the property owner, jurors could rationally conclude Smith was residing in the "makeshift room." The jury could also reasonably conclude that Smith's combative, uncooperative behavior

implicitly exposed his knowledge of the contraband and that his immediate trespassing-and-harassing accusations constituted a tacit acknowledgment that he owned or controlled the shed's contents. The conspicuous locations of the illicit items and the strong odor of marijuana emanating from the shed bolster those inferences.

**¶26** Smith counters that (1) his antagonistic behavior "was no more than protesting any contact with law enforcement," (2) the evidence did not establish his "actual knowledge of any of the several of the items that were in 'plain view' in the shed," (3) the others in the shed could have asked him to answer the door, and (4) his presence in a room at his father's residence does not amount to ownership or control of the contraband. But even assuming Smith's asserted inferences are reasonable, he has merely shown that rational minds could differ in assessing the evidence and determining guilt. Nor do we find merit to Smith's contention that the prosecutor unreasonably argued the contrary inferences to the jury. *See United States v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995) (An inference is reasonable when the evidence, viewed in context, "bears logical and proximate connection to the point the prosecutor wishes to prove."). Moreover, because we resolve evidentiary conflicts against Smith, his alternative accounts—which he argued to the jury—fail to provide grounds to vacate his convictions.

**¶27** Likewise, the purported absence of physical evidence connecting him to the contraband does not invalidate his convictions. *See State v. Gill*, 248 Ariz. 274, 278, ¶ 10 (App. 2020) ("[A] lack of fingerprints or DNA is hardly determinative, as a conviction 'may rest solely' on circumstantial evidence." (quoting *State v. Nash*, 143 Ariz. 392, 404 (1985)). And even if others at the property used or possessed the contraband, that fact would not nullify Smith's guilt. *See State v. Jensen*, 114 Ariz. 492, 493–94 (1977) (defendant possessed drugs found in a shared apartment's hallway under the theory of constructive possession). Thus, the superior court correctly allowed the jury to decide the case, and we abide by its conclusion.

## CONCLUSION

¶28        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA