NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LUIS ENRIQUE MENDOZA-SARAVIA, *Appellant*.

No. 1 CA-CR 15-0394
FILED 5-24-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-152676-001
The Honorable Karen A. Mullins, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Chris DeRose
*Counsel for Appellee*

Ballecer & Segal, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**G O U L D**, Judge:

¶1 Luis Enrique Mendoza-Saravia appeals his convictions for second degree murder, attempted second degree murder, unlawful discharge of a firearm, and two counts of aggravated assault. He further appeals his sentence to two years' imprisonment for unlawful discharge of a firearm. Mendoza-Saravia argues the trial court erred when it (1) sentenced him for unlawful discharge of a firearm as a dangerous offense, (2) admitted the testimony of a medical examiner who based his opinions on an autopsy report prepared by another medical examiner, and (3) admitted four photographs of the deceased victim. For the following reasons, we affirm Mendoza-Saravia's convictions and sentences as modified.

I.      Background

¶2 "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998) (citation omitted). On the night of the incident, Mendoza-Saravia's girlfriend ("Girlfriend") and her sister ("Sister") went to Mendoza-Saravia's residence. Girlfriend and Mendoza-Saravia argued and decided to end their relationship, after which Mendoza-Saravia told Girlfriend and Sister to leave. Mendoza-Saravia then retrieved a handgun and approached Girlfriend, who had sat down just outside. Mendoza-Saravia fired a shot into the ground beside her. When Girlfriend stood, Mendoza-Saravia pushed her to the ground. Sister told Girlfriend they should leave and then told Mendoza-Saravia he was a bad person. Mendoza-Saravia told Sister to shut up, shot her in the face, and killed her. He then fired the gun at Girlfriend as she lay on the ground, shooting her in the hand. A nearby surveillance camera recorded the incident.

¶3 Mendoza-Saravia admitted to police that he pointed the gun at Sister and fired it at her at least once, possibly twice. He never told police it was an accident. At trial, however, Mendoza-Saravia claimed the

shootings were an accident. A jury acquitted Mendoza-Saravia of first degree murder but found him guilty of the lesser-included offense of second degree murder. The jury otherwise found Mendoza-Saravia guilty as charged, and the trial court sentenced him to an aggregate term of twenty-three years' imprisonment.[1] Mendoza-Saravia now appeals. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2016), 13-4031 (2010) and 13-4033 (2010).

II. The Sentence for Unlawful Discharge of a Firearm

¶4 The jury found the count of unlawful discharge of a firearm was a dangerous offense. This made Mendoza-Saravia subject to the enhanced "Dangerous Offenders" sentencing provisions of A.R.S. § 13-704(A) (2012). The trial court sentenced Mendoza-Saravia to two years' imprisonment pursuant to this section. As the first issue on appeal, Mendoza-Saravia argues the trial court could not impose a sentence for unlawful discharge of a firearm as a dangerous offense because the State never alleged the offense was dangerous as required by A.R.S. § 13-3107(B) (2012).

¶5 Mendoza-Saravia raised no objection below to the sentencing. A failure to raise an issue at trial waives all but fundamental error. *State v. Gendron*, 168 Ariz. 153, 154 (1991). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24 (2005). Even if a defendant establishes fundamental error, the defendant must still demonstrate the error was prejudicial. *Id*. at ¶ 26.

¶6 We find no error, fundamental or otherwise. While the record on appeal does not contain a formal allegation by the State, any notice of an allegation of dangerousness is sufficient so long as the defendant is not "'misled, surprised, or deceived in any way by the allegations.'" *State v. Pesqueira*, 235 Ariz. 470, 478 ¶ 30 (App. 2014) (quoting *State v. Benak*, 199 Ariz. 333, 337, ¶ 16 (App. 2001)). "[F]or Sixth Amendment purposes, courts look beyond the indictment to determine whether defendants received

---

[1] Mendoza-Saravia pled guilty to an additional count of misconduct involving weapons based on the same incident and received a concurrent sentence of 2.5 years' imprisonment.

actual notice of charges[.]"[2] *State v. Freeney*, 223 Ariz. 110, 114, ¶ 24 (2009). Notice can come from information contained in the State's disclosures. *Id.* at 114, ¶ 27. More importantly for purposes of this case, notice can come from "the parties' joint pretrial statement[.]" *Id.* Approximately two weeks before trial, the parties filed a joint pretrial statement that identified the count of unlawful discharge of a weapon as a dangerous offense. Therefore, Mendoza-Saravia acknowledged before trial that he knew the State would seek to prove the count of unlawful discharge of a firearm was a dangerous offense. Mendoza-Saravia was not "misled, surprised or deceived" when the State subsequently sought to prove the offense was dangerous. Finally, Mendoza-Saravia does not argue he suffered any prejudice from the lack of formal notice or that the lack of formal notice otherwise adversely affected in any way his defense or the manner in which he tried the case.

III.    The Medical Examiner's Testimony

**¶7**        Mendoza-Saravia argues the trial court erred when it admitted the testimony of a medical examiner who did not perform the autopsy of Sister, but who referred during his testimony to the report of the medical examiner who performed the autopsy. Mendoza-Saravia argues this violated his right to confront the medical examiner who performed the autopsy and prepared the report. Mendoza-Saravia, however, did not raise any objection below to the testimony he now challenges.

    A.    Background

**¶8**        The medical examiner who performed the autopsy of Sister and prepared the report was no longer employed by the county by the time of trial. The testifying medical examiner reviewed the autopsy report and all the associated photographs. The medical examiner was familiar enough with the materials that at one point he told the prosecutor there were photographs that showed Sister's wounds more clearly than the photographs the prosecutor was attempting to use at that time.

**¶9**        The medical examiner testified that he was able to determine the cause and manner of Sister's death based on his review of the autopsy report and photographs. The State, however, then asked the medical examiner "what was noted" as the cause and manner of death. The medical

---

[2]        Mendoza-Saravia does not contend the trial court constructively amended the indictment pursuant to Arizona Rule of Criminal Procedure 13.5.

examiner responded, "The cause of death was listed as [a] gunshot wound of the head, and the manner is homicide."

¶10 Regardless, the medical examiner then explained his review of the photographs from the autopsy and how they depicted two wounds to Sister's head. Based on his training and experience, those wounds were consistent with gunshot wounds. Further, the wound on Sister's right cheek was consistent with an entrance wound and the wound on the upper left side of her head was consistent with an exit wound. He further testified that based on the locations of the entry and exit wounds, a single bullet entered Sister's right cheek and traveled upwards from right to left. The State did not offer the autopsy report itself into evidence.

B. Discussion

¶11 "[A]n expert may testify to otherwise inadmissible evidence, including the substance of a non-testifying expert's analysis, if such evidence forms the basis of the expert's opinion and is reasonably relied upon by experts in the field." *State v. Superior Court (Karp)*, 236 Ariz. 120, 124, ¶ 13 (App. 2014). This is because "the facts underlying an expert's opinion are admissible only to show the basis of that opinion and not to prove their truth[.]" *State v. Joseph*, 230 Ariz. 296, 298, ¶ 8 (2012). Therefore, "an expert does not admit hearsay or violate the Confrontation Clause by revealing the substance of a non-testifying expert's opinion." *Id*. The testifying expert must ultimately testify to the expert's own conclusions, however, and not be a "mere conduit" for the conclusions of the non-testifying expert. *Karp,* 236 Ariz. at 124-25, ¶¶ 17-18. Our supreme court has recognized that so long as these requirements are met, one medical examiner may provide testimony and opinions based on an autopsy performed by another, non-testifying medical examiner, and in doing so, may reveal the substance of the non-testifying medical examiner's analysis. *See Joseph*, 230 Ariz. at 298, ¶ 8; *State v. Smith*, 215 Ariz. 221, 228-29, ¶¶ 23-26 (2007).

¶12 We find no error. The testifying medical examiner was not a mere conduit for the analysis or conclusions of the examiner who performed the autopsy. The medical examiner testified that he personally determined the cause and manner of death based on his review of the autopsy report and photographs. It is unfortunate, but not reversible error, that the State then inartfully asked the medical examiner "what was noted" as the cause and manner of death. The State should have asked the medical examiner his opinion of the cause and manner of death based on his review of the materials. Regardless, the medical examiner explained that his

review of the photographs revealed two gunshot wounds caused by a single bullet that entered Sister's right cheek, passed through her head from right to left on an upward trajectory and then exited the upper left portion of her head. This testimony, coupled with the testimony that he determined the cause and manner of death based on his review of the autopsy materials, sufficiently communicated to the jury that it was the testifying medical examiner's opinion that Sister died as a result of a bullet that passed through her head, and that he was not simply regurgitating the information contained in the autopsy report.

¶13 Mendoza-Saravia's reliance on *Bullcoming v. New Mexico* is unavailing. In *Bullcoming*, the trial court admitted a non-testifying expert's written report into evidence to prove the truth of the matters asserted therein, and did so through someone who was nothing more than a surrogate witness. *Bullcoming v. New Mexico*, 564 U.S. 647, 659-60 (2011). That is not what occurred here. Finally, even if we assume *arguendo* that error occurred, any error was harmless. Mendoza-Saravia's sole defense was that the shooting was an accident. He admitted to police that he shot Sister and never claimed otherwise, and he never contested the fact that Sister died because Mendoza-Saravia shot her through the head.

IV.     The Photographs of Deceased Victim

¶14 As the final issue on appeal, Mendoza-Saravia argues the trial court erred when it admitted four post-mortem photographs of Sister. Those photographs depicted Sister's head and face as well as the entry and exit wounds. Mendoza-Saravia argues the photographs were irrelevant because he did not deny he shot Sister and that the danger of unfair prejudice substantially outweighed any probative value of the photographs. Mendoza-Saravia did not object to the admission of the photographs at trial.

¶15 "Photographs may be relevant 'to prove the corpus delecti, to identify the victim, to show the nature and location of the fatal injury, to help determine the degree or atrociousness of the crime, to corroborate state witnesses, to illustrate or explain testimony, and to corroborate the state's theory of how and why the homicide was committed.'" *State v. Anderson*, 210 Ariz. 327, 339-340, ¶ 39 (2005) (quoting *State v. Chapple*, 135 Ariz. 281, 288 (1983)). A trial court may admit relevant photographs into evidence even if those photographs may tend to prejudice the jury against the defendant. *State v. Bocharski*, 200 Ariz. 50, 55, ¶ 21 (2001). In determining whether a trial court erred in admitting a photograph, we examine "'the photograph's relevance, its tendency to inflame the jury, and its probative

valued compared to its potential to cause *unfair* prejudice.'" *State v. Morris*, 215 Ariz. 324, 339, ¶ 69 (2007) (emphasis added) (quoting *State v. Hampton*, 213 Ariz. 167, 173, ¶ 17 (2006)). A trial court may admit even gruesome or inflammatory photographs so long as they are not admitted for the sole purpose of inflaming the jury. *Morris*, 215 Ariz. at 339, ¶ 70; *see also Anderson*, 210 Ariz. at 340 ¶¶ 41-42 (determining that "quite gruesome" photographs depicting human decomposition, bloating, skin slippage and discoloration, injuries which resulted in death and a severed head with a knife through its ear and emerging through the nose were not unduly prejudicial).

¶16         We find no error, fundamental or otherwise. The photographs at issue were relevant to (1) identify Sister, (2) show the nature and location of her injuries, (3) corroborate witness testimony, (4) illustrate or explain the medical examiner's testimony, and (5) corroborate the State's theory of how Mendoza-Saravia shot Sister. That the photographs were unpleasant is of no matter. "The state 'cannot be compelled to try its case in a sterile setting.'" *Bocharski*, 200 Ariz. at 56, ¶ 25 (citation omitted). "There is nothing sanitary about murder, and there is nothing in Rule 403, Ariz. R. Evid., that requires a trial judge to make it so." *State v. Rienhardt*, 190 Ariz. 579, 584 (1997). "[A]ny photograph of the deceased in any murder case [is relevant] because the fact and cause of death are always relevant in a murder prosecution." *Anderson*, 210 Ariz. at 340, ¶ 40 (quoting *State v. Spreitz*, 190 Ariz. 129, 142 (1997)). Further, the photographs were admissible even though Mendoza-Saravia did not contest that he shot Sister or that she died from the gunshot. "Even if a defendant does not contest certain issues, photographs are still admissible if relevant because the 'burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.'" *State v. Dickens*, 187 Ariz. 1, 18 (1996) (citation omitted) (abrogated on other grounds, *State v. Ferrero*, 229 Ariz. 239, 242-43, ¶¶ 15-20 (2012)). Finally, it is apparent the photographs did not have an unfairly prejudicial effect based on the fact that the jury acquitted Mendoza-Saravia of first degree murder and convicted him of a lesser-included offense.

V.      Presentence Incarceration Credit

¶17         The trial court sentenced Mendoza-Saravia to concurrent sentences, the longest of which was twenty-three years' imprisonment. He was also awarded 965 days' credit for time served as to Count One, but zero days' credit for Counts Two through Six. A trial court's failure to credit a defendant with presentence custody constitutes fundamental error. *State v.*

*Ritch,* 160 Ariz. 495, 448 (App. 1989).  This court reviews de novo a grant of presentence incarceration credit.

**¶18**          Our review of the record shows Mendoza-Saravia was entitled to 965 days' credit on each concurrent sentence.  Accordingly, pursuant to A.R.S. § 13-4037(B), the judgment is modified to reflect 965 days of presentence incarceration credit to be applied against the sentences imposed on Counts Two through Six, as well as on Count One. *See State v. Stevens,* 173 Ariz. 494, 496 (App. 1992) (correcting presentence incarceration credit without remand to trial court.)

VI.     Conclusion

**¶19**          We affirm Mendoza-Saravia's convictions and sentences as modified.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama