NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

SCOTT ROBERT HAGEE,
*Appellant*.

No. 1 CA-CR 15-0417
FILED 6-7-2016

Appeal from the Superior Court in Maricopa County
No. CR2013-004709-002
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David D. Weinzweig
*Counsel for Appellee*

Law Office of Brent E. Graham, PLLC, Glendale
By Brent E. Graham
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

---

**D O W N I E**, Judge:

¶1        Scott Robert Hagee appeals his convictions and sentences for first-degree murder, attempted armed robbery, conspiracy to commit armed robbery, and burglary in the third degree. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On June 20, 2013, Officer Whaley was working in an undercover capacity as part of a neighborhood enforcement team. At 12:47 p.m., he received an emergency call from dispatch and responded to Lone Cactus Restoration — a vehicle restoration business. Officer Whaley and his partner arrived in separate vehicles and approached the building from the south and north sides. Additional patrol units arrived soon thereafter, and officers gathered just outside the building.

¶3        From his position, Officer Mayfield had an unobstructed view of the shop's interior and saw a masked individual. Officer Mayfield ordered that person to make his hands visible; the man dropped a gun from his right hand and a bag from his left hand, placed his left hand in the air, and removed a black ski mask from his head. That individual — Hagee — was taken into custody. A search incident to arrest revealed a bag of dog treats, tape, and zip ties in Hagee's pants pockets.

¶4        After Hagee was removed from the building, other officers entered and discovered the victim lying on the floor. He had been shot in the chest, and his face was injured and bloody.

¶5        When the victim arrived at the hospital, he was in critical condition and suffering severe hemorrhagic shock, having lost more than forty percent of his total blood volume. He had extensive injuries to his stomach, pancreas, liver, and several large blood vessels — most notably, the vena cava, which was the source of most of the blood loss. The victim died that evening.

¶6          The State charged Hagee with one count of first-degree murder, one count of attempted armed robbery, one count of conspiracy to commit armed robbery, and one count of burglary in the third degree.  The State also alleged numerous aggravating circumstances.

¶7          At trial, Hagee's former girlfriend, J.F., testified that Hagee and his friend, Jamell Bradley, discussed a plan to rob the victim.  Hagee stated that Bradley and the victim had a disagreement over "a business transaction [that] had not gone well" and that Bradley had enlisted Hagee's help to get "retribution."  Because the victim allegedly owed Bradley money, Hagee and Bradley "were going to rob him," believing the victim kept $20,000-$30,000 in a safe at his business.

¶8          J.F. testified that she was with Hagee when he purchased ski masks and zip ties for the robbery, and she saw him put dog treats in a plastic bag in case he needed to distract the victim's dogs.  In the week preceding the shooting, Hagee told J.F. he was "staking out" the victim.  J.F. also overheard a telephone conversation in which Hagee scheduled an appointment with the victim under the pretense of purchasing a vehicle.  Hagee told J.F. that he believed the ruse would offer an opportunity to learn the layout of the building and possibly locate valuables.  Hagee also informed J.F. he was considering abducting the victim from his home and taking him to the business to unlock the safe.

¶9          On the morning of June 20, 2013, J.F. noticed that Hagee was wearing multiple layers of clothing when he left her home, notwithstanding the summer heat.  Hagee had his gun holstered and carried a duffel bag containing tools, zip ties, and dog treats.  Bradley and Hagee departed in J.F.'s car, and when J.F. expressed concern that she would be linked to the crimes through her vehicle, Hagee assured her they would replace the license plate.

¶10          Hours later, Bradley drove J.F.'s car back to her house.  At the crime scene, Bradley had been stopped in J.F.'s vehicle and unwittingly let go by police officers, so J.F. drove her roommate's car to the crime scene to check on Hagee.  When she arrived, J.F. saw numerous police cars and crime scene tape.  She then picked up Bradley and drove him home.

¶11          The victim's girlfriend, M.G., testified that on the morning of June 18, 2013, she awoke and saw "dog bones laid out like a railroad tie right in front of the doggie door."  Neither M.G. nor the victim had placed the bones there, and when they checked their vehicles, they discovered that "a lot of money" had been stolen.  Later that evening, M.G. held a party at

the victim's shop to celebrate his birthday and met Hagee, who had ostensibly stopped by to discuss purchasing one of the victim's vehicles. M.G. also testified that, during the weeks preceding the victim's death, a young man came to the victim's home and business a few times, and the victim expressed anger that the man had "burned [him] out of $1,500." When presented with a photo line-up, M.G. identified the male as Bradley.

¶12        Dr. Poulos, a county medical examiner, testified about the victim's injuries and cause of death. He described the torso injuries caused by the gunshot wound and also numerous blunt force injuries to the victim's head. He opined that the blunt force injuries could be consistent with the victim having been struck by a firearm, slammed into a metal safe, and kicked with steel-toed boots. Although Dr. Poulos opined that the gunshot was a fatal injury in itself, he concluded the victim's death was caused by both the head and torso injuries.

¶13        A jury found Hagee guilty as charged. The trial court sentenced him to life without the possibility of parole for the murder conviction, a concurrent, aggravated term of fifteen years' imprisonment for attempted armed robbery, a concurrent, presumptive term of five years' imprisonment for conspiracy to commit armed robbery, and a concurrent, presumptive term of two and one-half years' imprisonment for burglary in the third degree.

¶14        Hagee timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.        Prior Acts/Character Evidence

¶15        Hagee argues the trial court erred by excluding evidence that the victim was involved in illegal drug transactions. He contends the evidence was admissible under Arizona Rules of Evidence ("Rule") 404(a)(2), (b), and 405(a), (b). Without this evidence, Hagee asserts, the jury was permitted "to hear a skewed, inaccurate version of the facts" that showed the "victim had a good character." Hagee further argues the ruling prevented him from showing that he "did not go to the victim's business to rob him, but to confront him over problems with the drug sales."

¶16        Approximately two weeks before trial, the State filed a motion *in limine* to preclude evidence that the victim had purchased or sold drugs and had a stolen firearm in his safe, arguing such information was

4

inadmissible as other act/character evidence under Rule 404(b) and was unfairly prejudicial under Rule 403. After hearing argument, the court granted the State's motion "pursuant to Rule 401, 402, and 403," concluding the character of the victim was not relevant. The court advised defense counsel that he could argue Hagee confronted the victim to resolve a "disagreement," not to rob him, but the argument would be sanitized to prevent any reference to the victim's "character as a drug dealer."

¶17 We review a trial court's ruling on a motion *in limine* for an abuse of discretion. *State v. Gamez*, 227 Ariz. 445, 449, ¶ 25 (App. 2011). "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250 (1996).

¶18 Relevant evidence is generally admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Relevant evidence may be excluded, though, if its probative value "is substantially outweighed" by a danger of unfair prejudice. Ariz. R. Evid. 403.

¶19 Hagee contends the victim's alleged drug-related activity with Bradley offered a defense to the armed robbery charges and, by extension, the felony murder for which armed robbery was the predicate offense. Applying Rule 401 to these facts, though, whether the victim engaged in illegal drug transactions was not a fact of consequence for the jury to consider in determining whether Hagee (1) conspired with Bradley to take money from the victim by force, (2) attempted to take money from the victim by force, and (3) ultimately shot and killed the victim. Contrary to Hagee's argument, an assertion that he was simply confronting the victim "to get back the money Bradley felt he was owed" and acting "as the muscle to get Bradley's money" provided no defense to armed robbery. Stated differently, even accepting Hagee's theory of defense, he intentionally used a deadly weapon to extract money from the victim against his will. Under the relevant statutes, such conduct constitutes armed robbery, and it is of no consequence that Bradley may have been "owed" the money as part of an illegal drug transaction. *See* A.R.S. § 13-1902(A) ("A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking

or retaining property."); A.R.S. 13-1904(A)(2) ("A person commits armed robbery if, in the course of committing robbery . . . such person or an accomplice uses or threatens to use a deadly weapon."). Indeed, a person can be criminally charged for forcibly taking his "own property" and the relevant statutes do not recognize "a claim of right" as a defense to armed robbery. *State v. Schaefer*, 163 Ariz. 626, 629 (App. 1990). Furthermore, the trial court permitted Hagee to argue that the catalyst for the confrontation was a dispute over a business transaction, which allowed him to place the substance of his claimed defense before the jury.

¶20 Relying on Rules 404 and 405, Hagee argues the other act/character evidence was nonetheless admissible. We disagree. Under Rule 404(a)(2), a defendant may introduce evidence of a "pertinent trait" of the victim to show that the victim acted in conformity with this trait on a particular occasion. As explained above, though, the victim's alleged character trait of dealing in illegal drugs was simply not relevant to the disputed issues before the jury. Pursuant to Rule 404(b), evidence of other crimes "is not admissible to prove the character of a person," but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Because Hagee was not attempting to introduce the prior acts for any of the enumerated exceptions, but instead to disabuse the jury of the "erroneous view" that the victim "had a good character," the evidence was not admissible under Rule 404(b).

¶21 Likewise, Rule 405(a) permits character evidence only when "evidence of a person's character or character trait is admissible." Because "[e]vidence of a person's character or a trait of character is not admissible" unless an exception applies, Rule 404(a), and Hagee has demonstrated no applicable exception, Rule 405(a) is inapposite. Finally, Rule 405(b) permits evidence of "a person's character or character trait" when it is "an essential element of a charge, claim, or defense." "To be an essential element, the character trait must be an operative fact which, under substantive law, determines the rights and liabilities of the parties." *State v. Williams*, 141 Ariz. 127, 129 (App. 1984). The victim's alleged involvement in prior drug transactions did not provide a defense to the charged offenses. Under these circumstances, the trial court did not abuse its discretion by excluding evidence that the victim engaged in illegal drug transactions.

## II. Testimony of Medical Examiner

¶22 Hagee contends the court erred by allowing Dr. Poulos to testify about the victim's autopsy in lieu of Dr. Enstice, who performed the

autopsy, but was no longer employed by the medical examiner's office at the time of trial. Specifically, Hagee argues he was denied his constitutional right to confront a witness against him when the contents of Dr. Enstice's report were introduced through Dr. Poulos.

**¶23** We review interpretations of the Confrontation Clause *de novo*. *State v. Medina*, 232 Ariz. 391, 405, ¶ 53 (2013). Hagee, however, did not object on this basis in the trial court, so we review his claim for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005); *see also State v. Dixon*, 226 Ariz. 545, 553, ¶ 34 (2011). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. at 567, ¶ 20.

**¶24** "The Confrontation Clause bars admission of out of court testimonial evidence unless the defense has had an opportunity to cross-examine the declarant." *State v. Parker*, 231 Ariz. 391, 402, ¶ 38 (2013) (citing *Crawford v. Washington*, 541 U.S. 36, 38 (2004)). "Testimonial evidence is *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id*. at 402–03 (quoting *Crawford*, 541 U.S. at 51).

**¶25** Our supreme court has repeatedly held that "a testifying medical examiner may, consistent with the Confrontation Clause, rely on information in autopsy reports prepared by others as long as he forms his own conclusions." *Dixon*, 226 Ariz. at 553, ¶ 36; *see also State v. Joseph*, 230 Ariz. 296, 298, ¶ 8 (2012) ("[A] testifying medical examiner may offer an opinion based on an autopsy performed by a non-testifying expert without violating the Confrontation Clause."); *State v. Smith*, 215 Ariz. 221, 228, ¶ 23 (2007) ("Expert testimony that discusses reports and opinions of another is admissible under this rule if the expert reasonably relied on these matters in reaching his own conclusion."). A testifying expert may not, however, act as a "conduit for another non-testifying expert's opinion." *State v. Lundstrom*, 161 Ariz. 141, 148 (1989).

**¶26** The record does not support Hagee's contention that Dr. Poulos' testimony "was nothing but a conduit for the autopsying doctor's conclusions." The autopsy report was not admitted into evidence at trial. Instead, Dr. Poulos testified on behalf of the medical examiner's office and offered his own opinions about the circumstances and cause of the victim's death. Although Dr. Poulos reviewed photographs, diagrams,

medical records, and the autopsy report in preparing to testify, and referred to the autopsy report while testifying, he used this information to reach his own independent conclusions. After Dr. Poulos offered his opinions, Hagee had the opportunity to confront and cross-examine him. *See State v. Rogovich*, 188 Ariz. 38, 42 (1997) ("[T]he defendant's confrontation right extends to the testifying expert witness, not to those who do not testify but whose findings or research merely form the basis for the witness's testimony.").

**¶27**        Citing *Medina*, Hagee contends Dr. Poulos' testimony was inadmissible because Hagee was a suspect at the time the autopsy report was generated. In *Medina*, the court addressed a Confrontation Clause challenge to the *admission of an autopsy report* when the report's author was unavailable to testify. 232 Ariz. at 405, ¶ 51. In concluding the report was nontestimonial for purposes of the Confrontation Clause, the court reasoned, in part, that the autopsy was conducted "before Medina became a suspect" and was not performed to "gather evidence to accuse Medina." *Id*. at 406, ¶ 62. But *Medina* has no application here, where the autopsy report was never admitted into evidence.

**¶28**        Finally, Hagee's reliance on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), is unavailing. Both cases involved the admission of documents found to be testimonial. *Melendez-Diaz*, 557 U.S. at 311; *Bullcoming*, 564 U.S. at 663–64. Here, even if the autopsy report could be viewed as testimonial, it was not admitted into evidence, and Dr. Poulos offered his own independent opinions, not the conclusions set forth in the report. *See Joseph*, 230 Ariz. at 298–99, ¶ 10; *State v. Snelling*, 225 Ariz. 182, 187, ¶ 21 (2010) (defendant's confrontation rights not violated when autopsy report not admitted into evidence).

**¶29**        No Confrontation Clause violation occurred, and the trial court did not err, much less fundamentally err, by permitting Dr. Poulos to testify.[1]

---

[1]        Furthermore, even if he could establish fundamental error, Hagee has not demonstrated the requisite prejudice. He claims prejudice because the jury could not observe the "demeanor" of the medical examiner who conducted the autopsy, but he fails to explain how this prejudiced his defense. There was no dispute at trial regarding the cause of death, and

**CONCLUSION**

¶30        We affirm Hagee's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA

---

Dr. Poulos' testimony about the victim's injuries and cause of death was entirely consistent with the trauma surgeon's testimony.